Re-signed as and to be)
(original)

1

5:22-ct-3341-BO

In The United States District Court

Eastern District of North Carolina

Ricky Butler, plaintiff    {    Complaint,
                                Jurisdiction: Bivens
                           (    Jury Trial Demanded,
        vs.                     28 U.S.C. 1331, U.S.C. 1981

Warden Sullivan, Warden Ramos,
Captain Fringley, Lt. Ross, John Doe, psychologist Herman,
Luertenant, Deputy Captain Pratt, Deputy Captain
Martin, Sgt. Gray, Officer Daley, officer "Spruce"
a.k.a John Doe officer as name is mispelled, ● Associate
Warden Robison, Lt. Andrews, officer Hayes,
Lt. Givens, John Doe Lt., officer Caroll, officer Harris,
Psychologist Delk, 3 John Doe Psychologists,
Complex Warden Scarintino, Lt. Carmona, and Carillo
Lt. Reese, Lt. Shaw, Deputy Chief of psychology
Williams, Dr. Sherras, Dr. Gillipsie (both psychologists)
Ass. Health Services Admistrator Daniels, 10 John
Doe officers "in their Individual Capicity",

                              defendants.

2

Plaintiff Ricky Butler, Complaining of defendants alleges as follows:

1. That plaintiff's current address is United States Penitentiary Thomson, P.O. Box 1002, Thomson, Illinois, 61285;

2. That plaintiff is a citizen of the United States and that, upon information and belief, defendants are all citizens of the United States and reside in the State of North Carolina and that, at all times relevant, were employed by the federal Bureau of Prisons as staff working at the Federal Correctional Complex Butner; more specifically –

3

F.C.I. #1 -Butner (and, the federal medical Center at Butner's Complex) located at Box 1000, Butner, North Carolina, 27509;

3. that ~~these~~ at all times relevant plaintiff was an inmate housed at the Federal Correctional Institution #1 located at the address as mentioned in paragraph two above;

4. that these claims are brought and that this Court has jurisdiction pursuant to Bivens v. Six Unknown Named Agents of the federal Bureau of Narcotics, 403 U.S. 388, 28 U.S.C. 1331 (Original jurisdiction);

5. that upon information and belief the defendants are all still employed by the federal Bureau of Prisons other than, upon information and belief, Warden Sullivan who retred;

6. that Venue is appropriate in the District of North Carolina because all of the events giving rise to this complaint happened in Butner, North Carolina at Butner F.C.I. medium #1, Box 1000, Butner North Carolina 27509;

7. that plaintiff brings this claim for damages to redress constitutional violations (procedural and substantive) of his rights under the Eigth —

## 5.

Amendment and Fith Amendent of the United States Constitution;

8. that the nature of these violations stem from plaintiffs severe mistreatment while on Suicide watch and/or in restraints from about may of 2020 to December of 2020 or about at F.C.I medium Butner #1 by defendants;

9. that when plaintiff first went on suicide watch in may of 2020 or about he repeatedly cut himself without any attempt to stop plaintiff by several John Doe agents/c.o's, including officer B. Hayes, A. Caroll, Daley although they

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 5 of 58

6.

repeatedly saw, was informed by the inmates assigned to watch plaintiff, including plaintiff himself and/or witnessed this themselves, including plaintiff jamming foreign objects in his penis in violation of their own suicide/self harm prevention regulations. At no time did defendants take any reasonable emergency measures to prevent plaintiff from harming himself;

10. this also included several John Doe supervisors, including Lt. Carillo, Givens, Robison;

11. that when plaintiff was finally placed in four point restraints by Lt. Carillo he was not

allowed to get up to use the bathroom causing plaintiff to urinate repeatedly on himself from about midnight until Officer Carillo's shift was over at 8:00am or about and that Carillo and the John Doe Paramedic tightly cuffed plaintiff's arms in opposite directions (one forward and the other backward) causing severe pain to plaintiff's shoulders, back and arms Without rotating them to mitigate the severe pain plaintiff felt and when Lts' Shaw and Reese came on shift both refused to allow plaintiff to use the bathroom when he requested or adjust plaintiff's restraints continuing the pain plaintiff felt;

12. that the log book (restraint / Suicide Watch books) shows that plaintiff had caused no problems to justify keeping plaintiff in the restraints (particularly in the torturous position that he was in) for that long as per the law and regulations regarding restraint time and how they are implemented and maintained;

13. In any event when plaintiff was taken out of restraints, upon information and belief at sometime later in May 2020 or about, he cut himself and jammed more objects in his penis on multiple occasions without several John Doe officers attempting to quickly intervene and instead casually —

9.

watching as plaintiff did this in violation of B.O.P. policy and their suicide prevention plan policy and procedure;

14. plaintiff was then placed in ambulatory restraints and voluntarily requested that the restraints stay on or otherwise "he would hurt himself again" which was logged by the officers watching plaintiff;

15. While plaintiff was in restraints Lt. Gray, Ross, Givens and various other supervisors refused to remove the cuffs and restraints in order to allow plaintiff to use the bathroom or eat unless plaintiff agreed to "permanently" stay out of the

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 9 of 58

10.

restraints but plaintiff told these staff he could not agree to having to <u>not</u> be able to go back in restraints as a condition to using the bathroom and/or properly being able to eat; because he still felt a danger to himself;

16. As a result plaintiff frequently used the bathroom on himself which got all over him and his smock and scarred his arms up desperately trying to get his restrained hands near his anus to wipe his buttocks which proved futile; eat

17. In addition, for <u>months</u> plaintiff was denied a shower <u>unless</u> he agreed to <u>not want</u> to go back

11.

in restraints if he was given a shower, a condition of which plaintiff refused to all the defendant Lieutenants and Captains and others;

18. that defendants deputy Captain Fringley, Martin, Sullivan and Ramos forcibly directed their Lieutenants (Ross, Gray and several other John Doe Lieutenants and officers) and staff to forcibly remove the restraints despite suicide watch log entries that plaintiff "stated" he was going to cut himself and harm himself in other ways if the restraints were removed during this period from about May to December 2020 (plaintiff repeatedly had staff watching notate plaintiff's threats in

the suicide watch/restraint watch books prior to the forced removal of which the said defendants were aware as they all read the log book entries and was repeatedly told this "verbally" by plaintiff prior to and during the time of the forced removal too (for instance, Lt. Ross and Lt. Taylor, acting Lt. mabe and the Captains and other John Doe staff were all told this by plaintiff) yet they still forcibly removed the restraints and on one occasion told staff, such as ms. Figureoua (an employee temporarily on loan from B.O.P. headquarters and assigned to watch me), ms. "Catlin" (may be spelled incorrectly) to

13.

to "just him do whatever he's going to do";

19. As soon as the restraints were removed, ~~despite~~ inspite of plaintiff's threats, plaintiff cut his throat just like he said he would do and no one attempted to stop plaintiff for well over an hour although they saw plaintiff cutting himself while standing in the mirror (his neck) including Dr. Herman, officer Daley, officer "Spruce", and several other John Doe staff (including mrs. Figueroa (who was assigned to watch me) ~~so~~ ~~ceec~~ whom noted my threats in the log books which I told her verbally and Lt. Ross, Taylor, Deputy Captain Fringley, psychologist Dr. Gillipsie and a host of other John Doe officers

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 13 of 58

14

(also including officer Mabe). A joint decision had been made by all of the above, including Wardens Sullivan, Ramos to remove the restraints despite my threats by ~~forcibly~~ taking me to the shower pretextually <u>to get me out of the restraints permanently</u> )

20. When the shower was over, as expected, the above said the restraints <u>weren't</u> going back on <u>regardless</u> of the <u>log entries</u> that <u>day</u> and the <u>day before</u> (not to mention many other times) "and" my threats <u>directly</u> to all of the above while going to and being in the shower. As a result I cut my neck and body with a piece of an object for over an hour (because

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 14 of 58

15

I could not see myself that good in the mirror and no one attempted to intervene to stop it. In fact Dr. Herman casually came to the door and asked me if I "wanted a piece of cake" as if nothing serious was going on;

21. Only after nurse Mandaza saw my neck did assistant Health Services Administrator Daniels come and ask me to come to the window so she could see how deep it. Plaintiff began to uncontrollably cry while talking to her wherein she asked me to "stop!" because she was going to make a phone call to ask them to put me back in restraints. Only after

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 15 of 58

16.

arguing on the phone with an unknown party

(upon information and belief plaintiff believes this

party to be Captain Fringley) was I placed

back in restraints after pictures were taken and

I was seen by medical. I also cut my arm.

~~While Lt.'s Ross and~~ This was ~~in may~~

between May and September of 2020; and bit holes in my arms after the restraints were forcibly removed; by the above;

22. To step the pressure up I was again told

by all defendant Lieutenants that ~~I~~ the restraints.

could not be removed for bathroom or to eat unless

I agreed to not go back into once they were

removed of which I declined the condition;

17.

23. During a significant part of the relevant period no suicide risk management plan had been even been implemented as required by B.O.P policy which allowed plaintiff to repeatedly injure himself by cutting his body parts (arms, neck) and inserting foreign objects into his penis which required surgeries and, even when one was put in place defendants rarely followed it, routinely <u>forcibly</u> removing plaintiff from the restraints so that plaintiff wasn't tying up 3 to 6 officers a day who had to constantly watch plaintiff;

24. This was at a time when Complex Warden Scarintino cut back over time across the complex

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 17 of 58

18

which allowed him to reap bonus pay for saving the B.O.P. money (the others = deputy Captain and above, upon information and belief, also recieved Kickbacks by cutting down on overtime (Captain, Associate Wardens, Warden and Complex Warden);

25. Also, the Jane Doe acting Associate Warden told plaintiff she was sick of having to come in to sign my suicide/restraint log books on her days off and that I was going to "have to come out of the restraints";

26. Right after Lts' Ross and Taylor forcibly —

removed plaintiff from restraints at the direction of Warden Ramos, Sullivan and the defendant Deputy Captain Fringley ( plaintiff was banging his head on the window while defendants attempted to remove all restraints ), plaintiff started to bite his wrist causing a huge gash in his arm;

27. Plaintiff overheard the defendant Lt's tell the John Doe officer watching him to "just let him do whatever he is going to do". When the John Doe officer said he was going to alert the supervising Annex officer, officer Catlin told him " don't do nothing, the Lt.s' just said to just let him do whatever he wanna do so let him chew himself up like a dog

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 19 of 58

"if that's what he wanna do" then began laughing and mocking plaintiff's actions;

28. On one occasion, when plaintiff was repeatedly cutting himself for hours (which the John Doe inmate suicide companion assigned to watch plaintiff repeatedly logged in the suicide watch book and for which he also notified repeatedly officer A.Caroll and B.Hayes they just laughed but refused to call in a medical and/or security emergency on their radio or to subdue plaintiff sometime between May and July 2020 or about; Instead they used the regular phone to call the shift supervisor whom left the issue for the next shift, although they had the power to use force to subdue

21

and/or mitigate plaintiff's actions such as by spraying him with mace or Cuffing and/or restraining plaintiff;

29. Defendant Hayes, Carroll and other John Doe officers routinely ~~casu~~ casually allowed plaintiff to do this over the course of the months he was on Suicide Watch;

30. On one occasion, during the relevant period, after a John Doe officer was notified by the inmate companion that plaintiff cut himself, the John Doe officer took no reasonable steps to subdue plaintiff; Lt. Givens, whom was notified did not show up for well over an hour and, when he did, questioned the inmate companions certainty as to whether plaintiff

Case 5:22-ct-03341-BO   Document 1   Filed 09/08/22   Page 21 of 58

self harmed himself on another shift or as the suicide watch inmate had stated just then. In stead of taking the inmate companions allegations as truthful and accurate and/or rewinding video footage and/or believing the plaintiff the defendant Lt. Givens instead told plaintiff to " let me see you do it right now on camera in front of me" Which is exactly what plaintiff did which then forced Lt. Givens to place plaintiff in restraints although plaintiff shouldn't have had to re-injure himself just to be put back into restraints. Upon information and belief ~~the Jo~~ one of the John Doe officers working at that time was officer

23.

B. Hayes and the inmate watching plaintiff was upon information and belief, "Mobley" (last name);

31. On another occasion plaintiff jammed a piece of a fork into his penis while officer Hayes was not sitting at his post where he could see the plaintiff. Instead of sitting where he could see a full view thru the glass officer B. Hayes sat facing away from the glass and fell asleep multiple times while plaintiff injured himself sometime between April and September of 2020 or about:

32. During this time officer Hayes, John Doe

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 23 of 58

24

officer that was also working including Lt. Givens ~~made no~~ took no emergency steps to to stop plaintiff even though they were all aware while the injuring was in progress;

33. That on an unknown date between April and November of 2020, after a medical staff member hung up the phone on plaintiff before plaintiff could complete his pain management con-versation with the specialist, plaintiff told several John Doe officers that he was angry, depressed and going to injure himself, yet the John Doe officers refused to obtain control of plaintiff prior to his actions or to search plaintiff or his cell recklessly—

- 25 -

allowing plaintiff to cut himself and/or insert foreign objects in his penis (such as by putting him in restraints and/or spraying plaintiff with mace in order blunt the risks to plaintiff); In addition, even though the John Doe officers were put on formal notice and <u>watched</u> plaintiff repeatedly injure himself (over the course of hours or about) they there requirement to intervene was casually delayed as it Plaintiffs actions were not an emergency)

34. that on or about Thanksgiving Day or about of 2020 several John Doe officers (including Hayes, Lt. Gwens and others) allowed plaintiff —

to repeatedly cut himself without intervening and left plaintiffs arm bleeding all night even though plaintiff and the inmates repeatedly notified them of (and trey saw) of what he was doing and had already done. Plaintiff did not recieve any medical attention until around 6:00am or about ~~the~~ even though he started sawing his arm open hours earlier;

35. that a day or two or about prior to this day of injuries plaintiff repeatedly cut himself under the exact same circumstances as outlined in para-graphs 33 and 34 above (notified several John Doe officers and the inmates-(hereinafter "S.W.C"'s -which -

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 26 of 58

27.

stands for "suicide watch companions whom are assigned to watch inmates on suicide watch in place of _costlier_ correction officers)- of his intent to harm himself in which he repeatedly did without any reasonably timely intervention by staff;

36. that throughout this "several months" of _continuous_ self injury while on suicide watch, Wardens Ramos and Sullivan were made repeatedly aware of plaintiffs actions, intentions yet by requesting a copy of the daily log book entries and being told by their agents, associates, deputies and/or assistants, yet actively refused to place plaintiff in restraints and/or to —

create a suicide risk management plan as required by law and/or to follow it once it was finally in place;

37. On June 9 or 10th and/or July 9,10 and/or 25th of 2020 I repeatedly informed all staff to document my threats of self-injury if I was taken out of restraints which the John Doe staff documented;

38. that despite this documentation along with my verbal threats Warden Sullivan, Captain Fringley and others directed (and/or removed) that I be removed from restraints which caused me to repeatedly injure himself such as by cutting his neck, arms and inserting foreign—

- 29-

objects into his penis "for hours" uninterupted despite various John Doe staff members (and inmates complaining to staff of what I was doing) witnessing it;

39. Eventually and reluctantly restraints were placed back onto plaintiff. However, deputy Captain Pratt directed staff to remove the restraints despite plaintiffs threats to injure himself. As soon as the leg irons were forcibly removed plaintiff hopped up on the toilet in attempt to began carrying out his threats. However instead of just putting the leg irons back on plaintiff (constituting full "ambulatory" restraints with the hand cuffs, belt chain) Pratt directed staff to step up the pressure by putting plaintiff in four point restraints (a much more —

restrictive, ~~and~~ immobilizing and painful form of restraint);

40. Pratt, Warden Ramos and/or Sullivan left me in four points for two days without proper justification since I hadn't self harmed when I was in ambulatory restraints and, in any event, while I was in four point restraints;

41. Furthermore, Pratt illegally directed staff assigned to watch me, including Shift Lieutenants Givens and others not to rotate plaintiff's limbs while he was in four points so as to vindictively step up the pressure on plaintiff in effort to get him to agree —

to come out of restraints despite B.O.P. policy requiring routine rotation causing severe and chronic pain, including tears in plaintiff's rotator cuffs, loss of range of motion and hand coordination from unbearable pain and stiffness and swelling.

42. After about two days of being in four point restraints Pratt again directed staff, including Lieutenants Gray and Ross to retry the same manuever: place plaintiff back in ambulatory restraints for an hour or two then start the process of complete removal regardless of my verbal (or the written log entry threats) threats and, should plaintiff resist ambulatory restraint removal Pratt ordered that —

plaintiff immediately be placed back in four point restraints even though Pratt and the Warden knew ahead of time (based on notations in the suicide/ restraint log books) of plaintiff's intent to self harm if taken out of ambulatory restraints;

43. As such simply because plaintiff didn't feel safe coming out of ambulatory restraints during the relevant periods defendant Pratt, Warden Ramos and/or Sullivan along with others, such as Lt's Ross and Reese racheted up the punishment by putting plaintiff in four point restraints even though there was no pene – logical basis to do so as plaintiff had not injured himself while in ambulatory restraints. Thus the racheting

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 32 of 58

up to four point restraints simply because plaintiff refused to agree to come out of ambulatory restraints can only be seen as a form of punishment and /or excessive force;

44. That furthermore deputy Captain Pratt personally came to the suicide cell to ensure that staff were placing plaintiff in four points how he wanted plaintiff to be in them. The jail's practice up until then had been to extend another pair of handcuffs on plaintiff's hands so that plaintiff's hands were somewhat ambulatory and had a little give and take (presumptively to prevent stiffness and injury). However, when Pratt saw this he jumped up on top of plaintiff's chest and angrily removed the extra—

pair of extension handcuffs then slammed the plaintiffs hands into the restraint holes on either side of the bed. Plaintiff felt his bones pop and told Pratt who said " too Bad ";

44. Pratt also taunted plaintiff " I doubt you ever been in restraints before how I do them cause you aint gonna be able to take this";

45. Pratt left plaintiff's arms and torso stretched in this supertight position and directed staff (Lt's Reese, Gray, Givens, Carillo and others) not to _ever_ change plaintiffs restraint positioning (which is contrary to B.O.P. Program Statement and constituted cruel and unusual punishment) —

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 34 of 58

46. Plaintiff was left in four points in the exact same position for weeks or about and Warden Sullivan and/or Ramos knew but made no attempt to intervene even suicide log book entries show that plaintiff was no threat and plaintiff repeatedly complained of severe pain;

47. the only time plaintiff's restraint position was changed was when plaintiff bit his arm in order to force defendants Lt. Reese, Givens, Carillo, Ross and others to re adjust his dislocated wrist- In addition, Pratt squeeze the shackles around plaintiffs legs so tight that plaintiff developed blood clots and sores all over his ankles;

48. the defendants also refused to get plaintiff up to

use the bathroom forcing plaintiff to urinate on himself and when plaintiff was in ambulatory restraints refused to remove the restraints so that plaintiff could use the bathroom and/or eat (Lt's Ross, Reese, Gray, Carillo, Givens and other John Doe officers);

Causes of Action

A.   1st Cause of Action:

the said defendants as outlined in paragraphs 9 and 10 of this complaints Violated plaintiffs eighth amendment rights to be free from cruel and unusual punishment as well as his fifth amendment rights by allowing and repeatedly allowing plaintiff to injure himself and failing -

to promptly intervene despite being informed by inmates watching plaintiff and/or plaintiff himself. Their actions and/or ommissions constituted deliberate indifference, reckless disregard, gross negligence, per se violations of plaintiff's procedural and substantive rights causing severe injuries including but not limited to deep gashes, cuts and/or insertion of foreign bodies (which required surgical removal) and severe pain to plaintiff's arms, neck and/or genitals; this also constituted retaliation for plaintiff trying to go back into restraints, and conspiracy)

## Second Cause of Action

B.

As and for a second cause of action the defendants, as outlined in paragraphs 11 and 12 of this complaint, the said defendants kept plaintiff in

restraints for an excessive amount of time despite log entries, showing plaintiff was causing no problems, refused to change the position of the restraints pursuant to B.O.P. program statement, refused to allow plaintiff out of the restraints in order to use the bathroom which constituted ~~Fegard~~ reckless disregard, deliberate indifference, per se gross negligence per se violations of their own rules and regulations, wilful and wanton negligence violating plaintiffs rights under the eighth and fifth amendments, causing very severe and prolonged pain to plaintiffs torso, both arms by harshly stretching it and them in opposite directions for over 12 hours and failing to allow plaintiff to utilize the—

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 38 of 58

the restroom and/or move around as per B.O.P. program Statement, and constituting retaliation and conspiracy; and violations of plaintiffs' Fifth Amendment rights;

## Third Cause of Action

C. the said defendants as outlined in paragraphs 13 allowed plaintiff to repeatedly cut himself without attempting to promptly intervene violating plaintiff's 8th Amendment rights to be free from cruel and unusual punishment and the fifth Amendment to the U.S. Constitution; these violations also constituted a conspiracy to allow plaintiff to deliberately injure himself without prompt intervention constituting deliberate indifference, reckless disregard per se violations of their own laws and regulations; Conspiracy and retaliation for ~~trying to~~ ~~come back~~ in restraints;

## Fourth Cause of Action

d. defendants as outlined in paragraphs 14-17 (Lt's Gray, Ross, Gwens, Carillo, Reese, & Capt. Fringley and/or Martin with the consent of Warden Sullivan and/or Ramos and others) violated plaintiffs 8th Amendment Rights by refusing to allow plaintiff to have his restraints temporarily removed in order to use the bathroom, eat and/or to losen his arm causing plaintiff to experience scarring and unnecessary pain to his arms, made it virtually impossible to wipe himself and pull food up to his mouth constituting reckless disregard and deliberate Indifference and constituting a conspiracy in "effort" to pressure plaintiff to agree to come (permanently) out of restraints as well as retaliation; and rashes over plaintiffs body;

- 41-

Fifth Cause of Action

e: the defendants as outlined in paragraphs 18-2 $\emptyset$ violated plaintiffs 8th Amendment rights, fifth Amendment rights, acted with deliberate indifference and/or reckless disregard, conspired to deny plaintiff medical treatment, delay medical treatment and willfully and wantonly allow plaintiff to injure himself and violated their own rules and regulations, acting with deliberate indifference, and/or reckless disregard and to plaintiffs safety and their actions also constituted retaliation for not agreeing to voluntarily come out of restraints - all in violation of their own suicide prevention policies;

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 41 of 58

## Sixth Cause of Action

F. - the defendants as outlined in paragraphs 22-29 violated plaintiffs 8th Amendment Rights, Fifth Amendment Rights, conspired to allow plaintiff to harm himself, deny removing the restraints temporarily so as to allow plaintiff to properly eat, use the restroom, and/or simply walk around without restraints on temporarily as outlined in B.O.P. Policy and Program Statement and/or refused to allow plaintiff a shower unless he agreed to stay out of the restraints once the shower was over causing severe scarring to plaintiffs arms and legs including swelling, blood clots and cuts from the restraints being deliberately squeeze extra tight as retaliation -

the said defendants also violated their own policies and procedures by lengthily delaying to implement a suicide prevention plan and instead allowed plaintiff to repeatedly cut himself, swallow objects, insert objects in his penis and bite holes in his arms without any intervention;

## Seventh Cause of Action

9.- the said defendants as outlined in paragraphs 30 willfully and wantonly (Lt. Givens) directed plaintiff to injure himself in front of him as a prerequisite to placing plaintiff in Restraints, delayed coming to the area while plaintiff injured himself the first time and prior to all this Lt Givens told plaintiff the next -

time you injure yourself I'm going to take my time

coming; if you die then you just die." The John Doe

officers violated plaintiffs (as did Lt. Givens) 8th

Amendment Rights, Fifth Amendment Rights, acted with

deliberate indifference, and/or reckless disregard and

conspired and retaliated because plaintiff tried to go

back in restraints;

## 8th Cause of Action

h. — the defendants as outlined in paragraphs 31-32

allowed plaintiff to injure himself by inserting a fork

in his penis (officer Hayes, Lt. Givens and others)

while off of their post, took no emergency steps to stop

plaintiff and instead casually waited _hours_ before

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 44 of 58

even attempting to nominally intervene (When Lt Givens finally arrived) all he did was casually tell plaintiff to throw the remnants of the left over piece of fork out of the food slot, then walked off to go home Violating plaintiffs 8th Amendment Rights, Fifth Amendment Rights and their own policies and procedures and acted with retaliation by ridiculously delaying the amount of time to come to the scene. This constituted Reckless disregard, and deliberate indifference;

## 9th Cause of Action

i - As a result of defendants (~~Lt Givens, Hayes and others~~ John Doe officers) deliberate indifference, reckless disregard as outlined in paragraph 33 plaintiff repeatedly made deep

Cuts to his arm and inserted objects into his penis without any of the John Doe officers attempting to intervene even though they witnessed what plaintiff was doing and was put on notice of plaintiff's intentions prior to him doing it violating plaintiff's 8th Amendment Rights, Fifth Amendment Rights, Substantive and procedural rights and their own regulations, policies and procedures;

### 10th Cause of Action

j — the defendants as outlined in paragraphs 34 violated plaintiffs 8th and 5th Amendment Rights by by allowing plaintiff to repeatedly cut himself without prompt intervention and also violated plaintiffs fifth and —

— 47

8th Amendment Rights by attempting to force medical officer Slosman on plaintiff despite plantiff having an unresolved P.R.E.A. (Prison Rape Elimination Act) complaint against officer slosman ana violated the P.R.E.A act. Despite Plaintiffs Injuries including pools of blood all over the cell and complaints by witnessing inmates The defendants refused to attempt to subdue plaintiff until the psychologist came in, saw the crime scene, complained to her boss and only then was my cut vein attended to; the defendants action and/or ommissions constituted deliberate indifference to plantiff's safety, medical needs, retaliation, conspiracy not to keep plaintiff out of —

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 47 of 58

restraints regardless of his repeated self injuries"
as stated by Lt. Carmon, Captain Martin and
with the personal sanction and knowledge of Warden
Ramos whom read plaintiffs suicide log-entries
every day. The defendants also violated the
Prison Rape Elimination Act;

## 11 th Cause of Action

K.— the defendants as outlined in paragraph 35
acted with deliberate indifference, reckless disregard
by failing to intervene, comply with the Program
Statement, C.F.R., failing to protect and, as such,
violated plaintiffs 8th Amendment + Fifth Amendment
rights allowing plaintiff to repeatedly cut —

Cut himself and/or Insert dangerous objects in his penis, or mouth. Defendant's violated plaintiff's procedural and substantive Rights under the constitution;

## 12th Cause of Action

L: — As a direct result of defendants Ramos, Sullivan their agents, deputies, assistants and or associates failure to implement A suicide prevention plan plaintiff repeatedly injured himself for months including the previous causes of actions but not limited to Just them by cutting himself, biting huge holes in his arms, swallowing large pieces of metal and/or

- 50 -

other objects, inserting objects into his penis - the delay in implementing a suicide prevention plan by the said defendants was the proximate cause of plaintiff's repeated self injuries and the failure to consistently follow it once it was implemented led to multiple self injuries by plaintiff including cuts, insertion of objects into my body, bites to my arms, concussions to my head from banging my head on windows, cuts to my throats violating plaintiffs 8th and 5th Amendment Rights, conspiring to violate those rights and acting with retaliation by deliberately not putting plaintiff in restraints despite his repeated self-injurious behavior.

- 51-

as outlined in paragraphs 36 j

## 13th Cause of Action

m.— that despite plaintiff's various threats to injure himself if taken out of restraints as outlined in paragraphs 37, 38, the said defendants willfully and wantonly, with reckless disregard and/or deliberate indifference allowed plaintiff to repeatedly injure himself without intervening and, as such, failing to protect plaintiff violating plaintiff's 8th and 5th Amendment Rights and their own policies, procedures and law j

## 14th Cause of Action

N.— As a direct results of the said defendants—

Case 5:22-ct-03341-BO    Document 1    Filed 09/08/22    Page 51 of 58

actions including (but not limited to) Captain R Pratt, Warden Ramos they violated plaintiffs rights against cruel and unusual punishment (8th and Fifth Amendment violations) acted with deliberate indifference, reckless disregard wilful and wanton gross negligence and/or deliberate indifference, acted with retaliation, used excessive force, violated B.O.P program statements regarding usage and application of restraints (as outlined in paragraphs 39-48) causing severe pain and damage to plaintiffs arms, shoulders (torn rotator cuffs) spurring of the bones, loss of Range of motion, severe body pain from being stretched out so much in the same positions, blood clots—

and scarring to my legs and arms, hallucinations]

Wherefore, for all of the foregoing allegations Plaintiff requests defendants be held jointly and severally liable for punitive and compensatory damages in the amount of 3 million dollars, declaratory relief and for such other and further relief as this court deems appropriate.

Respectfully Submitted by,        dated - May 6, 2022

Ricky Butler #600860-60

United States Penitentiary Thomson
Box 1002
Thomson IL, 61285

*1*

In The United States District Court

District of North Carolina

Verification

Ricky Butler #60086-060,
        plaintiff

vs.

Warden Sullivan, Ramos, et. al.,

        defendants.

Ricky Butler, the plaintiff, alleges as follows:

That the foregoing is true and correct, except

matters stated upon information and belief of which

he believe it to be true
Ricky Butler
Ricky Butler

I swear under penalty of
Perjury the foregoing as true and correct.

dated: 8-6-2022

2

United States Penitentiary Thomson
Box 1002
Thomson IL, 61285

Grievance Procedure

Ricky, Butler alleges as follows:

1. Because he was on suicide watch and/or in restraints for about 7 months "or so" he was in no position to be able to file a grievance and, as such, his time line for filing such would have been futile and/or denied as severely untimely

X _____

Ricky Butler #60086060

USP Thomson

Box 1002

Thomson, IL 61285

8-06

dated: 5-6-2012

Other Lawsuts

Ricky Butler # 60086060 the plaintiff
swears as follows in terms of lawsuts or cases:

1. He has one pending in U·S·District Court
District of Rhode Island, Case # 1:19cv 00313
Ricky Butler vs. Martin et, al

2. He has one pending in U·S· District Court Eastern
District of Virginia Case No 1:18cv1525
Ricky Butler vs. Northern Neck Regional Jail et·al·

3. He has one pending in the State of N·Y·
Ricky Butler vs· State of NY, (Court of
Claims Case No: 121941          ) -held in
abeyance/ closed til video trial can be held

4. He has one in the City of Newyork —

2

Ricky Butler vs. the City of New York
Case No. 2014- (unable to provide case # at
this time) still pending